## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

LUKE WESSLEY BENDER, *et al.*

Defendants.

Criminal Action No. 21-508

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Pending before the Court are defendants Luke Wessley Bender and Landon Bryce Mitchell's Motions for Release Pending Appeal, ("Bender's Mot." and "Mitchell's Mot.," where similar "Defs.' Mots."), ECF Nos. 146 and 148, in light of the Supreme Court's grant of certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, 217 L. Ed. 2d 285 (Dec. 13, 2023), to resolve whether 18 U.S.C. § 1512(c)(2) applies to "acts unrelated to investigations and evidence," *see* Pet. Writ of Certiorari § i, *Fischer v. United States*, No. 23-5572 (Sept. 11, 2023) (presenting the question whether "the D.C. Circuit err[ed] in construing 18 U.S.C. § 1512(c) . . . which prohibits obstruction of congressional inquiries and investigations, to include acts unrelated to investigations and evidence"). Section 1512(c)(2) is among the criminal statutes defendants stand convicted of violating. The government opposes defendants' motions. *See* Gov't's Opp'n Bender's Mot. ("Gov't's Bender Opp'n"), ECF No. 149; Gov't's Opp'n Mitchell's Mot. ("Gov't's Mitchell Opp'n"), ECF No. 151. For the reasons stated below, defendants' motions are GRANTED, with prospective release dates set pending the Supreme Court's resolution of *Fischer*.

I.    **BACKGROUND**

Defendants were convicted, following a stipulated bench trial, on December 7, 2022, of a single felony offense for Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count One), and five misdemeanor offenses, including Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three), Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four), Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  Bender Judgment at 1–2, ECF No. 132; Mitchell Judgment at 1–2, ECF No. 134.  During the stipulated trial, the defendants "agreed that having reviewed the evidence against them the government was able to meet its burden of proving beyond a reasonable doubt each of the charges against them."  Minute Entry (Dec. 7, 2022).  Upon the defendants' convictions on all counts, the government did not object to defendants continuing on pretrial release pending sentencing, *see* Trial Tr. at 72:16–20, ECF No. 97 (Dec. 7, 2022); Bender's Arrest Warrant Return on July 29, 2021, ECF No. 5; Minute Entry for Bender's Initial Appearance (July 30, 2021); Mitchell's Arrest Warrant Return on October 20, 2021 and Minute Entry for Mitchell's Initial Appearance, *United States v. Mitchell*, No. 21-cr-717 (D.D.C. Oct. 20, 2021).

At the sentencing hearing, on April 20, 2023, the Court determined the applicable advisory guidelines sentencing range for both defendants.  Sentencing Transcript at 35:12–37:19, ECF No. 142 (Apr. 20, 2023).  Specifically, Counts One through Three, to which the guidelines apply, are grouped together pursuant to U.S.S.G. § 3D1.2(c) so that the offense level applicable to the group is driven by the charge resulting in the highest offense level.  On Count One, U.S.S.G. § 2J1.2

2

applied with a base offense level of 14, which was increased by 3 offense levels, pursuant to U.S.S.G. § 2J1.2(b)(2), "because the offense resulted in the substantial interference with the administration of justice, specifically the proceedings of Congress," for a total offense level of 17. *Id.* at 36:12–19.[1]  As to Count Two,  U.S.S.G § 2B2.3(a) applied with a base offense level of 4, which was increased by 2 offense levels, pursuant to U.S.S.G. § 2B2.3(b)(1)(A)(vii), "because the trespass occurred at a restricted building or grounds," but as a result of a cross reference, at U.S.S.G. § 2B2.3(c)(1) and 2X1.1(a), the offense level was adjusted up to 17 offense levels "because the offense was committed with the intent to commit a felony offense," for the same total offense level of 17 as applied to Count One.  *Id.* at 35:21–36:06.  As to Count Three, U.S.S.G. § 2A2.4 applied with a base offense level of 10, with no adjustments applied under that guideline. *Id.* at 36:07–36:11.   The highest total adjusted offense for the group consisting of Counts One, Two, and Three, *see* U.S.S.G. § 3D1.2(c), was 17.  *Id.* at 36:19–22.  This total adjusted offense level was reduced by 3 offense levels, under U.S.S.G. § 3E1.1(a) and (b), for the defendants' acceptance of responsibility, for a total offense level of 14 for both defendants.  *Id.*  at 36:23–37:03.[2]

Bender, who is in Criminal History Category III, had an advisory guideline sentencing range of 21 to 27 months' imprisonment, *id.* at 37:04–07, while Mitchell, who is in Criminal History Category IV, had an advisory guideline range of 27 to 33 months' imprisonment.  *Id.* at 37:07–11.  A sentence within the advisory sentencing range could only be imposed on Count One,

---

[1]      The D.C. Circuit issued an opinion on March 1, 2024 in *United States v. Brock*, No. 23-3045, holding that the sentencing enhancement at U.S.S.G. § 2J1.2(b)(2) does not apply to convictions under 18 U.S.C. § 1512(c)(2) for conduct disrupting Congress's counting and certification of the electoral college votes on January 6, 2021, but that decision does not influence the outcome in this case, since the Court would have varied upwards by at least three offense levels to account for the significant disruption of a critical and important governmental function as a result of defendants' offense conduct if the specific offense characteristic at U.S.S.G. § 2J1.2(b)(2) did not apply.

[2]      The sentencing guidelines are inapplicable to Counts Four or Five, which are Class B misdemeanors each carrying a maximum sentence of six months' imprisonment.  *See* U.S.S.G. § 1B1.9; 40 U.S.C. § 5109(b).

which had a statutory maximum of 20 years, and not on Counts Two and Three, which as Class A misdemeanors carried a maximum penalty was 12 months' incarceration. The maximum penalty for the Class B petty offense misdemeanors in Counts Four, Five, and Six was six months. *Id.* at 37:23–38:02.

Both defendants were sentenced at the low end of the applicable the guidelines advisory sentencing ranges. *Id.* at 116:15–122:07. Bender was sentenced to a term of 21 months' imprisonment on Count One, and the statutory maxima of 12 months' imprisonment on Counts Two and Three, and 6 months' imprisonment on Counts Four, Five, and Six, to be followed by 36 months of supervised release as to Count One and 12 months as to Counts Two and Three, with terms of incarceration and supervised release to run concurrently. *Id.* at 116:19–117:05; *see also* 18 U.S.C. § 1752(b)(2) ("The punishment for a violation of subsection (a) is . . . imprisonment for not more than one year[.]"); 40 U.S.C. § 5109(b) ("A person violating section [5104(e)(2)] . . . shall be . . . imprisoned for not more than six months[.]"). Mitchell was sentenced to a term of 27 months' imprisonment on Count One, and the statutory maxima of 12 months' imprisonment on Counts Two and Three, and 6 months' imprisonment on Counts Four, Five, and Six, to be followed by 36 months of supervised release as to Count One and 12 months as to Counts Two and Three, with terms of incarceration and supervised release to run concurrently. *Id*. at 121:21–122:07.

Both defendants were permitted, over the government's objection as to Mitchell, to self-surrender to the facility designated by the U.S. Bureau of Prisons ("BOP"). Sentencing Tr. at 132:12–13 (granting both defendants' motions for self-surrender). According to Bender, he self-surrendered to BOP on July 6, 2023, Bender's Mot. at 2, and according to Mitchell, he self-surrendered to BOP on November 1, 2023, Mitchell's Mot. at 5.

On April 25, 2023, Bender filed a notice of appeal of his conviction on Count One, Notice of Appeal at 1, ECF No. 138, and on May 1, 2023, Mitchell filed a notice of appeal of his conviction and sentence on each offense, Notice of Appeal, ECF No. 34, *United States v. Mitchell*, No. 21-cr-717 (D.D.C. May 1, 2023). Both defendants have yet to file their appellate briefs, and both appeals have been held in abeyance pending the Supreme Court's resolution of *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023). *See* Order, No. 23-3056 (D.C. Cir. Jan. 16, 2024); Order, No. 23-3060 (D.C. Cir. Jan. 30, 2024).

Shortly after the D.C. Circuit's orders holding each appeal in abeyance pending the Supreme Court's resolution of *Fischer*, on January 17, 2024 and January 26, 2024, defendants Bender and Mitchell, respectively, filed their pending motions, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1), for release pending appeal, given the Supreme Court's grant of *certiorari* in *Fischer*, *see* No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023), arguing that they are not likely to pose a risk of flight or safety to others, and that their appeals and the grant of *certiorari* raise a substantial question of law that may result in a prison sentence that would expire before their appeals conclude. Defs.' Mots. at 1. For the reasons set forth below, defendants' motions are granted, but with delayed release dates.

## II.   DISCUSSION

Courts are directed to "order the release" of an individual pending appeal upon finding, "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," 18 U.S.C. § 3143(b)(1), and, in pertinent part, "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal . . .  or (iv) a reduced sentence to a term of imprisonment less than the

total of the time already served plus the expected duration of the appeal process," *id.* § 3143(b)(1)(B); *see also* Charles Alan Wright et al., 3B FED. PRAC. & PROC. CRIM. § 770 (4th ed.). Defendants bear the burden of showing that both statutory prongs are met. *See United States v. Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1987) (per curiam) (recognizing "the required showing on the part of the defendant" as to "whether [an] appeal 'raises a substantial question of law or fact likely to result in reversal'" (quoting 18 U.S.C. § 3143(b)(1)(B))); *see also United States v. Zimny*, 857 F.3d 97, 101 (1st Cir. 2017) (noting defendant has "burden to show entitlement to release from custody pending appeal under § 3143(b)(1)"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007) ("In enacting § 3143(b), Congress placed the burden as to all elements bearing on whether to grant bail pending appeal on the defendant." (quotation marks, brackets, and citations omitted)). These standards are met as to both defendants.

First, this Court finds, by clear and convincing evidence, that both defendants are "not likely to flee or pose a danger . . . if released." 18 U.S.C. § 3143(b)(1)(A). The government notes that "[p]rior to his sentencing in this case, Bender committed, or was accused of committing, crimes on four occasions resulting in 16 separate state charges," and that each of those charges "resulted in no jail time, a suspended sentence, or had yet to be sentenced" when sentence was imposed in this case. Gov't's Bender Opp'n at 4. The government did not seek pretrial detention, however, and raised no objection to defendant remaining on release pending sentencing and allowing defendant to self-surrender following sentencing. *See* Order Setting Conditions of Bender's Release, ECF No. 6; Sentencing Tr. at 126:22–25. Moreover, as the government does not contest, "[f]rom his arrest, until the day he reported to prison, Mr. Bender was in 100 percent compliance with the Pretrial Services Agency's High Intensity Supervision Program, to include Global Position Systems ("GPS") monitoring, without any GPS or curfew non-compliance."

Bender's Mot. at 4.  As the Court recognized at his sentencing, Bender apparently "got his life back on track, that he has the support of family, that he has matured.  He is in a committed marriage.  He has goals in his life."  Sentencing Tr. at 110:11–14.

Notwithstanding this record, the government contends that Bender may be more likely to flee now that he "knows the day-to-day reality of confinement in prison," Gov't's Bender Opp'n at 4, but this argument ignores that defendant did not flee prior to commencing his imprisonment and self-surrendered.  While the government's concern that Bender may pose a danger to others given that "we are now in a presidential election year," Gov't's Opp'n at 5, is legitimate in light of Bender's serious offense conduct for which he stands convicted, this concern is mitigated by Bender's conduct from the day he was arrested.  His concerted efforts to turn his life around bely concerns that he poses a flight risk or a continued danger to the community.  The Court is not persuaded that Bender would pose a danger to others, where he complied with the conditions of release pending trial and sentencing, and earned the BOP report of being a "model inmate" since self-surrendering.  Bender's Mot. at 6; Bender's Reply at 2.

As to Mitchell, as the government notes, Mitchell concedes that he "did not have ideal compliance with his conditions of release (in particular, the conditions regarding prompt reporting, drug use, and drug counseling)."  Mitchell's Mot. at 5.  Indeed, during the pendency of this case, Mitchell was briefly arrested for drug possession, although the Court declined to revoke his pretrial release.  *Id.*  Barring these challenges, however, Mitchell claims that he "never once fled nor posed a risk to the safety of others," and "successfully complied with his conditions of release while on home confinement and living with his brother and sister-in-law" during the final three months of his release.  *Id*.  After his sentencing in this case, Mitchell "went directly to Virginia to resolve a case there, served a sentence, immediately contacted counsel and pretrial services upon his release,

and followed every direction [from] pretrial and probation to get a new self-surrender date, prior to ultimately surrendering to the BOP."  Mitchell's Reply at 2, ECF No. 152.  The government invokes the same arguments here about Mitchell knowing the realities of prison and it being an election year, *see* Gov't's Mitchell Opp'n at 4–5, but again, these arguments fail to overcome Mitchell's showing that he will not pose a flight risk or a danger to others if released.  Mitchell has also satisfied this prong.

Second, defendants' appeals "raise[] a substantial question of law or fact."  18 U.S.C. § 3143(b)(1)(B).  Specifically, defendants challenge their convictions on Count One, arguing that their conduct does not fall within the scope of Section 1512(c)(2), *see* Bender's Mot. at 4–5; Mitchell's Mot. at 5–7, which argument was rejected by this Court when presented in defendants' pretrial motions to dismiss, *see* Memorandum and Order (Nov. 22, 2022), ECF No. 79, consistent with subsequent rulings by the D.C. Circuit in *Fischer*, 64 F.4th at 350, and *United States v. Robertson*, 86 F.4th 355, 381 (D.C. Cir. 2023).  The Supreme Court granted *certiorari* to resolve whether Section 1512(c)(2) applies to "acts unrelated to investigations and evidence."  *See Fischer*, 2023 WL 8605748 (granting petition for *certiorari*); Pet. Writ of Certiorari § i, *Fischer v. United States*, No. 23-5572 (Sept. 11, 2023) (presenting the question whether "the D.C. Circuit err[ed] in construing 18 U.S.C. § 1512(c) . . . which prohibits obstruction of congressional inquiries and investigations, to include acts unrelated to investigations and evidence").

"[A] substantial question" means "a close question or one that very well could be decided the other way."  *Perholtz*, 836 F.2d at 556 (quotation marks and citations omitted).  This is a "demanding standard . . . to accord with the expressed congressional intent to increase the required showing on the part of the defendant."  *Id*. at 555–56.  The question on appeal of whether the conduct for which defendants have been convicted in Count One falls within Section 1512(c)(2)'s

ambit satisfies this standard, as other Judges on this Court considering the same issue have found. *See United States v. Sheppard*, No. 21-cr-203 (JDB), 2024 WL 127016, at *3 (D.D.C. Jan. 11, 2024); *United States v. Adams*, No. 21-cr-354 (APM), 2024 WL 111802, at *2 (D.D.C. Jan. 10, 2024); *accord* Minute Order, *United States v. Clark*, No. 21-cr-538 (DLF) (D.D.C. Dec. 21, 2023) (granting defendant's motion to stay self-surrender date pending resolution of *Fischer*).

The government correctly argues that "[t]he mere fact that the Supreme Court agreed to hear Fischer does not indicate that it was wrongly decided." Gov't's Mitchell Opp'n at 6. Indeed, defendant may be overly optimistic that the Supreme Court's resolution of *Fischer* may be favorable to him, where the D.C. Circuit has twice upheld, over lone dissents, the application of Section 1512(c)(2) to obstructive conduct designed "to stop Congress from certifying the results of the 2020 presidential election," *Fischer*, 64 F.4th at 335; *see also Robertson*, 86 F.4th at 375–76, and the "striking" "near unanimity of [] rulings" by every other Judge on this Court, with one exception, that "adopted the broad reading of the statute . . . to uphold the prosecution of defendants who allegedly participated in the Capitol riot," *Fischer* 64 F.4th at 338 & n.3 (collecting cases); *see also* United States Br. Opp. Pet. Certiorari, *Fischer v. United States*, No. 23-5572, 2023 WL 7164427, at *20 n.3 (Oct. 30, 2023) ("[E]very other district judge in the District of Columbia has now rejected the interpretation adopted by the district judge here." (citations omitted)).[3] At the

---

[3]  *See also United States v. Gillespie*, No. 1:22-cr-60, 2022 WL 17262218, at *3–6 (D.D.C. Nov. 29, 2022) (Howell, J.); *United States v. Hale-Cusanelli*, 628 F. Supp. 3d 320, 325–26 (D.D.C. 2022) (McFadden, J.); *United States v. Robertson*, 610 F. Supp. 3d 229, 232–36 (D.D.C. 2022) (Cooper, J.), *aff'd*, 86 F.4th 355 (D.C. Cir. 2023), *and aff'd*, 84 F.4th 1045 (D.C. Cir. 2023); *United States v. Williams*, No. 21-cr-618, 2022 WL 2237301, at *8–17 (D.D.C. June 22, 2022) (Berman Jackson, J.); *United States v. Fitzsimons*, 605 F. Supp. 3d 132, 137–151 (D.D.C. 2022) (Contreras, J.), *appeal docketed*, No. 23-3123 (D.C. Cir. Aug. 1, 2023); *United States v. Bingert*, 605 F. Supp. 3d 111, 118–28 (D.D.C. 2022) (Lamberth, J.); *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2–12 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Puma*, 596 F. Supp. 3d 90, 96–108 (D.D.C. 2022) (Friedman, J.); *United States v. Grider*, 585 F. Supp. 3d 21, 27–34 (D.D.C. 2022) (Kollar-Kotelly, J.); *United States v. Montgomery*, 578 F. Supp. 3d 54, 69–87 (D.D.C. 2021) (Moss, J.); *United States v. Nordean,* 579 F. Supp. 3d 28, 42–54 (D.D.C. 2021) (Kelly, J.); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 24–27 (D.D.C. 2021) (Boasberg, J.); *United States v. Caldwell*, 581 F. Supp. 3d 1, 11–34 (D.D.C. 2021) (Mehta, J.); *United States v. Sandlin*, 575 F. Supp. 3d 16, 21–34 (D.D.C. 2021) (Friedrich, J.); *but see United States v. Miller*, 589 F. Supp. 3d 60, 66–79 (D.D.C.) (Nichols, J.), *reconsideration denied*, 605 F. Supp. 3d 63 (D.D.C. 2022), *and rev'd and remanded sub nom. United*

same time, *Fischer* produced three separate decisions, including a dissent, and such fractured appellate decision-making strongly suggests a "close question" that is far from frivolous. *Accord Adams*, 2024 WL 111802, at *2 ("[T]he Supreme Court's decision to review *Fischer* means, at a minimum, that this case poses a 'close question.'").

Third, a reversal of *Fischer* is likely to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," 18 U.S.C. § 3143(b)(1)(B)(iv), for both defendants.  A favorable ruling for defendants in *Fischer* would not result in "reversal" under Section 3143(b)(1)(B)(i), for while such ruling may require vacatur of defendants' Section 1512(c)(2) convictions, defendants remain convicted on five misdemeanor counts.  *See Perholtz*, 836 F.2d at 557 (stating the appeal must "raise[] a substantial question likely to result in reversal of *all* counts on which imprisonment is imposed" (emphasis supplied) (citation omitted)).  Vacatur of defendants' Section 1512(c)(2) convictions would, however, likely "result in . . . a reduced sentence" in their term of imprisonment.  18 U.S.C. § 3143(b)(1)(B).

The government asserts that, based on the Court's prior calculations of Bender's guidelines range as to Counts Two and Three, assuming that his § 1512(c)(2) conviction was entirely invalidated, his guidelines range would likely have been 6 to 12 months.  Gov't's Bender Opp'n at 7–8.  The parties agree that, based on the Court's prior calculations, defendant Mitchell's offense

---

States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023); *United States v. Fischer*, No. 1:21-cr-234 (CJN), 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) (Nichols, J.), *rev'd and remanded*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023); Minute Order, *United States v. Lang*, No. 1:21-cr-53 (CJN) (D.D.C. June 7, 2022) (Nichols, J.).

level would drop from 14 to 8.  Mitchell's Mot. at 8; Gov't's Mitchell Opp'n at 7.[4]  With Mitchell's original Criminal History Category of IV, this would result in a guidelines range of 10 to 16 months, without accounting for the applicable statutory maximum capping the applicable sentencing range at 12 months, pursuant to U.S.S.G. § 5G1.1.  Gov't's Mitchell Opp'n at 8. Mitchell has filed a motion for reduction of his sentence based on the retroactive application of U.S.S.G. § 4A1.1(e), however, in which he argues that he is entitled to a reduction of two status points, which would then place him in Criminal History Category III, with a guidelines range of 6 to 12 months for his remaining misdemeanor offenses.  *See* Mitchell's Mot. at 8; *see generally* Mitchell's Mot. Reduce Sentence, ECF No. 153.   Whether that motion is granted and Mitchell faces a guidelines range of 6 to 12 months or the 10 to 16 months calculated by the government, should both defendants' convictions under Section 1512(c)(2) be vacated, their "likely reduced sentence" would be 12 months' incarceration, the statutory maximum and within the advisory guideline sentencing ranges for the Class A misdemeanors in Counts Two and Three.  *See* U.S.S.G. § 5G1.1(a); *see also supra* Part I.

As to both defendants, the government argues that they should not be released pending appeal because their convictions on the five misdemeanor counts could be served "consecutively to achieve the same period of imprisonment," after the Court's consideration of "whether its sentence [on the misdemeanor counts] was influenced by the vacated obstruction conviction." Gov't's Mitchell Opp'n at 8, 9 n.1.  As support, the government points to the cross reference potentially applicable to defendants' convictions on Count Two, for violation of 18 U.S.C.

---

[4]     The government also asserts that even with the reversal of his § 1512(c)(2) conviction, the defendants' applicable sentencing range would remain unchanged, reasoning that his 18 U.S.C. § 1752(a)(1) conviction would be cross referenced to the obstruction guideline, U.S.S.G.§ 2J1.2, because defendants acted with intent to commit an obstruction felony.  Gov't's Mitchell Opp'n at 7 n.1; Gov't's Bender Opp'n at 7–8 n.1. This ignores, however, that statutory maximum of 12 months applicable to this Class A misdemeanor would be the applicable sentencing range. *See* U.S.S.G. § 5G1.1.

§ 1752(a)(1), and notes that defendants' conduct was "substantially worse" than that of January 6 misdemeanants.  *Id.* at 9; Gov't's Bender Opp'n at 10.  While possible, imposing consecutive sentences on the five misdemeanors would be a departure from both default practice under federal law, *see* 18 U.S. Code § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."), and the position advanced by the government and adopted by this Court at defendant's sentencing in the instant case, where the government did not seek consecutive terms of imprisonment, *see generally* Gov't's Sentencing Mem., ECF No. 114, resulting in an order to concurrent terms of imprisonment on all Counts, *see* Sentencing Tr. at 121:21–122:07.

The Supreme Court is anticipated to decide *Fischer* by the time its current term ends in June 2024, at which point Bender will have served approximately twelve months and Mitchell will have served approximately eight months in custody.  The decision by the Supreme Court will not have immediate effect, and by the time the Supreme Court's mandate issues and the case has been remanded to the district court, if a resentencing is necessary, both defendants may have served a longer period of time imprisoned than could be sustained by their convictions on the remaining counts.  Mitchell notes that this is particularly true where he did not waive his other appellate issues, and he notes that his "appeal is likely to drag on for many months even after the Supreme Court decides *Fischer*."  Mitchell's Mot. at 10.  The Court will thus order both defendants released when they have served twelve months in prison, on July 7, 2024, for Bender, and November 2, 2024, for Mitchell.  *See Shepphard*, 2024 WL 127016, at *5 (setting prospective release date for January 6 defendant asking for release from custody pending Supreme Court decision in *Fischer*).

**III.**    **CONCLUSION**

Accordingly, both defendants Bender and Mitchell's Motions for Release Pending Appeal are GRANTED, with prospective release dates set, for Bender, of July 7, 2024, and, for Mitchell, of November 2, 2024.   An order consistent with this Memorandum Opinion will be filed contemporaneously.

**SO ORDERED.**

Date: March 6, 2024

_____
**BERYL A. HOWELL**
United States District Judge